## William De Armond and another v. James M. Neasmith and another.

*Trover: Heifer: Identity: Evidence.* In an action of trover for the conversion of a heifer which both parties claimed to have raised, where the question in dispute was one of identity, it is competent to ask a witness who has testified to having been among plaintiffs' herd of cattle for two or three years, as to their being gentle and coming about people; all such other facts and circumstances or characteristics, besides color, as would tend to throw light on the identity, would be competent evidence.

*Identity: Evidence.* It was not objectionable in such case to permit a witness for defendants, who had testified to having known the animal in question for a long time, to be asked on cross-examination if he had not made statements out of court about his grandfather's having hunted for this heifer.

*Evidence: Impeachment: Identity of questions.* It is not competent, for the purpose of impeaching a witness who has denied having stated, in a conversation to which he had testified, that his father and the plaintiff had *divided* some cattle, to admit evidence of a statement in such conversation that his father had *traded* the heifer in question for other cattle; when an attempt is made to impeach a witness there should be no reasonable doubt that the question asked the impeaching witness is substantially identical with that put to the witness sought to be impeached.

*Record of the weather: Evidence: Temperature.* A record of the weather, kept for a number of years at the state insane asylum, is held competent evidence to prove the temperature of the weather on a given day included in such record.

                    *Submitted on briefs April 29.    Decided June 15.*

Error to Kalamazoo Circuit.

*Edwards & Sherwood,* for plaintiffs in error.

*Arthur Brown,* for defendants in error.

DE ARMOND *v.* NEASMITH.

PER CURIAM:

Defendants in error brought trover in justice's court for the conversion of a two-year-old heifer. The only question apparently in dispute between the parties was one of identity, each party claiming to own and ·to having raised the heifer.

A witness sworn on the part of the plaintiffs below, after testifying that he had been among Neasmith's herd of cattle the last two or three years, was asked: "How were they as to being gentle, coming around you?" This was objected to as immaterial, but was admitted. This, we think, was competent evidence to go to the jury as bearing upon the question in issue. Each party having claimed to raise a heifer, and that this was the identical heifer raised by him, the jury should be put in possession of such other facts and circumstances besides color as would tend to enlighten them and enable them to determine the question of ownership.

Nathan Watters, a witness sworn on the part of defendants, and who had testified to having known the animal in question for a long time, was upon cross-examination asked if he had not told a Mr. Cunningham about his grandfather's hunting for this heifer. This was objected to by defendants' counsel, and the objection overruled. We see no objection to this testimony.

George Neasmith, a witness sworn for plaintiffs, testified to a conversation at a certain time and place with William De Armond, and among other things testified: "I did not tell him father and uncle John had divided some cattle. I am sure I did not say any thing of that kind." William De Armond, when afterwards called, testified to having seen Neasmith's boys at the time and place referred to by Neasmith, when he (De Armond) was asked: "What did they say to you?" This was objected to as immaterial and hearsay. Defendants' counsel then said he proposed to prove that George Neasmith in that conversation said that his father had traded this heifer to John Neasmith, and received two others in exchange for her. The objection was sustained. This

DE ARMOND *v.* NEASMITH.

testimony could be admissible only for the purpose of impeaching George Neasmith; for any other purpose it was inadmissible. Neasmith when on the stand was asked about a conversation relative to *dividing* some cattle, while he was sought to be impeached by showing that he said his father had *traded* this heifer and received two others in exchange. There is, we think, considerable difference between dividing cattle, which implies an ownership in common and a division thereof, and a trading and receiving others in exchange. The witness might well have denied saying any thing about a division, and yet have had a conversation about trading cattle. When an attempt is made to impeach a witness there should be no reasonable doubt but that the questions asked the impeaching witness and the witness sought to be impeached are one and the same. It so easy for witnesses to misunderstand each other, or to forget what was really said, that there should be no chance for dispute in this respect. Fairness to both requires this.—See *1 Greenleaf's Ev.*, § *462 and note.*

The plaintiffs' counsel offered in evidence a record of the weather kept at the Insane Asylum for a number of years, for the purpose of showing the temperature of the weather in March, 1868. We think the record was admissible, and comes within the principle of *Sisson v. Cleveland & Toledo R. R. Co., 14 Mich., 497.*

We find no error in the record. The judgment must therefore be affirmed, with costs.