174

## CITIZENS' GAS LIGHT AND HEATING COMPANY

*v.*

## NORA O'BRIEN.

*Filed at Springfield October 6, 1886.*

1. NEGLIGENCE—*master and servant—exposing the latter to poisonous gases—liability of the master.* Where a gas company, by negligence, permits the escape of poisonous gases into a room not properly arranged so as to let it pass out, and knows of such escape and the danger of inhaling the same, and either the company, or its superintendent, duly authorized to employ and discharge, manage, direct and control its employes or workmen, orders a servant to do certain work in such room, and the servant, in obedience to such order, without knowledge of the danger to which he is exposed, and without fault or negligence on his part, undertakes to do the work, and is overcome by the gas so escaping, whereby he falls and receives an injury, from which he dies, the company will become liable to the personal representative of such deceased servant, in damages, for his death.

2. SAME—*question of proper care on the part of the person injured—of an instruction on that subject.* In such case, on the trial of a suit brought by the administrator of the deceased servant, the court instructed the jury, that if they believed, from the evidence, that the defendant company and its superintendent had knowledge of the danger of the service required, and that the servant, without such knowledge, *or* any fault or negligence, but in obeying the order of the superintendent, inhaled said gas, which caused his death, to find for the plaintiff: *Held,* that while the use of the disjunctive "or," was not grammatical or proper, it was not such an error as to call for a reversal, especially where the instructions, as a whole, were more favorable to the defendant than it could ask.

3. SAME—*contributory negligence—of an instruction, as introducing an element not belonging to that question.* In an action of that character, where it became a question whether the servant's negligence did not contribute to his death, the court was asked to instruct the jury, that if they believed, from the evidence, that the deceased, at the time he started to go up to the place he was required to work, was told by a witness not to go the way he did, but to take a long ladder and go on it, and that deceased refused to do so, and in consequence thereof came to his death, they should find for the defendant: *Held,* that the instruction was properly refused, as being calculated to leave the impression that the refusal to take the ladder was of itself evidence of negligence, whereas it had nothing to do with the question.

4. Where the turning point in the case was whether the fall of the deceased from the place to which he was ordered to go, was caused by his inhaling the poisonous gases escaping from the works, or whether it was accidental,

the death being directly caused by the fall, it is not proper, in an instruction, to divert the minds of the jury from such main issue, by directing them to consider the manner in which the deceased reached the place from which he fell. If the fall was caused by the breathing of the gas, it is not material how the deceased made his ascent,—whether by a ladder, or by climbing part of the way.

5. EVIDENCE—*to show the place of an accident and surroundings.* On the trial of an action against a gas company to recover damages for negligence resulting in the death of the plaintiff's intestate, by breathing poisonous gases negligently allowed to escape in the room where the deceased, as a servant of the company, was put to work, it was *held,* not error, but proper, to show, by a witness, the place of the accident, with all its surroundings, including the location of the smoke-stack which was used in generating the gas.

6. SAME—*to show qualification of an expert witness and his personal experience.* Where an expert witness is called to testify as to the kind and quality of gases produced from the combustion of hard coal, and their effect upon the human system, and has shown his knowledge as a student and teacher of chemistry, it is eminently proper to ask him what experience he has had with such gases, and if in answer he gives a practical illustration of a part of his general knowledge and experience on the subject, there will be no error.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding.

Messrs. KERRICK, LUCAS & SPENCER, for the appellant:

It was error to permit Dr. Mason either to give his personal experience or observation in a case not related to the one at bar, even though similar. Rogers on Expert Testimony, sec. 30; 1 Greenleaf on Evidence, sec. 448; *Clark* v. *Willett,* 35 Cal. 534; *Railroad Co.* v. *Pearson,* 35 id. 247; *Horne* v. *Williams,* 12 Ind. 324; *Emerson* v. *Gaslight Co.* 6 Allen, 146; *Clark* v. *Bruce,* 19 Hun, 274.

The second of appellee's instructions is erroneous, as containing a direct assumption that O'Brien was ordered to go where his life and safety would be endangered. In such a case great care should be taken to instruct accurately. *Warren* v. *Wright,* 6 Bradw. 602; *Chicago* v. *Bixby,* 84 Ill. 83; *Russell* v. *Minteer,* 83 id. 150.

Where there is a question as to whether the deceased was guilty of negligence or not, an instruction which directs the jury, if they believe certain facts, to find for the plaintiff, without containing the requirement of any degree of care on the part of the deceased, is erroneous. *Schmidt* v. *Railroad Co.* 83 Ill. 405; *Railroad Co.* v. *Hetherington,* 83 id. 510; *Railroad Co.* v. *Mock,* 72 id. 141.

And this is so, even though other instructions contain a correct exposition of the law. *Railroad Co.* v. *Payne,* 49 Ill. 499; *Railroad Co.* v. *Murray,* 62 id. 326; *Baldwin* v. *Killian,* 63 id. 550; *Railroad Co.* v. *Maffit,* 67 id. 431; *Village of Warren* v. *Wright,* 3 Bradw. 602.

The use of the word "fault," being in the disjunctive, was also erroneous. *Railroad Co.* v. *Berger,* 9 Bradw. 341.

A master may say: "If I am to be responsible for accidents that happen to you, you must do as I say, to avoid them. You must trust my judgment, and I will see that in consequence of so doing no harm befalls you." Because he refused to obey the master's orders there can be no recovery in this case. *Abend* v. *Railroad Co.* 111 Ill. 202; *Iron Co.* v. *Burke,* 12 Bradw. 369; *Flannagan* v. *Railroad Co.* 50 Wis. 462; *Brown* v. *Byroads,* 47 Ind. 435; *Railroad Co.* v. *Thomas,* 51 Miss. 641; *Felch* v. *Allen,* 98 Mass. 574; *Lockwood* v. *Railroad Co.* 55 Wis. 50; *Strong* v. *Railroad Co.* 60 Barb. 30.

It is well established that there can be no recovery if the servant's disobedience contributes, in whole or in part, to the injury. Wood's Law of Master and Servant, 399, 400; *Oil Co.* v. *Malin,* 60 Tex. 645; *Lynn* v. *Railroad Co.* 31 Mich. 429; *Railroad Co.* v. *Hawk,* 72 Ala. 116; *Weigh* v. *Railroad Co.* 25 N. Y. 568; *Beaulien* v. *Portland Co.* 48 Me. 295; *Cunningham* v. *Lyoners,* 22 Wis. 245.

Mr. JOHN T. LILLARD, for the appellee:

The ground for admitting an expert to testify is, that from his larger experience and more exact observation of facts, and

the connections between certain appearances and their causes
or results, he is able to draw correct conclusions from circum-
stances which a man of ordinary knowledge and experience
could not do. *Dickenson* v. *Fitchburg,* 13 Gray, 555; *State*
v. *Clark,* 12 Ind. 151.

Admitting, for the purpose of argument, that Dr. Mason's
answer was open to criticism or objection, what possible effect
would it have had on the verdict? It was a trifling circum-
stance, corroborative of the undisputed properties and charac-
ter of the gases, as established by the other evidence. *People*
v. *Gonzales,* 35 N. Y. 49; *Thompson* v. *McLaughlin,* 66 Ill.
407; *Creote* v. *Willey,* 83 id. 444; *Stevison* v. *Earnest,* 80 id.
513; *Railway Co.* v. *Zoffinger,* 107 id. 199; *Kreigh* v. *Sherman,*
105 id. 49; *Railroad Co.* v. *Rung,* 104 id. 641; *Village of
Warren* v. *Wright,* 103 id. 298.

A new student or teacher may testify as an expert. Lawson
on Expert Evidence, 10, 118; *State* v. *Wood,* 53 N. H. 484;
*Taylor* v. *Railway Co.* 48 id. 304; *Dale* v. *Johnson,* 50 id. 452;
*Hartung* v. *People,* 4 Parker's Cr. Rep. 319; *State* v. *Hinkel,*
6 Iowa, 380; *Bierce* v. *Stocking,* 11 Gray, 174.

It is presumed the jury read the second instruction as it
commonly impresses the mind. *Life Ins. Co.* v. *Robinson,*
98 Ill. 324; *Rolling Mill Co.* v. *Gillen,* 100 id. 52; *Schmidt*
v. *Sinnott,* 103 id. 160; *Beard* v. *Maxwell,* 113 id. 440.

If the instructions are open to criticism on the question of
the care O'Brien was at the time exercising, or in assuming
that he was ordered into a place of danger, which assumption
I confidently deny, even then the errors are cured by appel-
lant's fourth, sixth, seventh, eighth, ninth and tenth instruc-
tions, telling the jury, over and over again, that plaintiff
could not recover without proving that deceased was exercis-
ing ordinary care and prudence for his safety, and by appel-
lant's sixth and tenth, and by appellee's instructions, telling
the jury that before plaintiff could recover she must prove
that Burns knew of the presence of the gas in dangerous.

12—118 ILL.

quantities.   *Packet Co.* v. *Binninger,* 70 Ill. 571; *Railroad Co.* v. *Funk,* 85 id. 460; *Belt* v. *People,* 97 id. 463; *Lawrence* v. *Hagerman,* 56 id. 70; *Railway Co.* v. *Ingraham,* 77 id. 309; *Railroad Co.* v. *Swearengen,* 47 id. 206.

The appellant's instructions refused, even if not covered by others given, were not correct as drawn, and could not have been properly given if they had been the only ones asked by appellant.   They single out a certain piece of evidence and give it a prominence not permitted by this court in instructions.   They also misstate what Byerly said and did.   *Swigar* v. *People,* 109 Ill. 272; *Railroad Co.* v. *Warner,* 108 id. 538; *Phenix* v. *Costner,* 108 id. 208; *P. M. L. I. Co.* v. *Clark,* 59 N. H. 345; id. 499; *McIntyre* v. *Thompson,* 14 Bradw. 555; *Railroad Co.* v. *Goss,* 13 id. 619; *Pennsylvania Co.* v. *Stoelke,* 104 Ill. 201.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action *on the case,* brought by Nora O'Brien, in the McLean circuit court, against the Citizens' Gaslight and Heating Company, to recover damages for alleged negligence causing the death of Patrick O'Brien, her late husband. There have been two trials of the case in the circuit court, in both of which the plaintiff was successful.   In the first, the verdict and judgment were for $5000; in the second, for $3500.   The first judgment was reversed for an erroneous ruling of the trial court, and the second has been affirmed by the Appellate Court for the Third District, whence the case comes here, on the appeal of the defendant.

The evidence tends to show, that before and at the time of O'Brien's death he was in the employ of the defendant, as a laborer, and was subject to the orders and direction of George B. Burns, superintendent of defendant's gas works; that immediately before the accident causing his death, O'Brien was ordered by Burns to remove some boards from the upper part

of the building, which were in danger of taking fire; that in obedience to this order, O'Brien ascended a ladder resting against and extending a short distance above the condenser, from the top of which he caught hold of some iron girders, and swung himself up to where the boards were; that he remained there but a few moments, when, seeming to be strangely affected, he started to return, and in doing so, fell to the floor below, resulting in serious injuries, from which he died in a few hours.

The contention of appellant is, that the fall of the deceased was the result of an accident, that would have been avoided had he got a ladder long enough to reach the boards, as was suggested to him at the time,—in short, the defence is that of contributory negligence. On the other hand, it is contended by appellee, and such is the charge in the declaration, "that by reason of the defective condition and improper operation of the apparatus used in the manufacture of gas, poisonous gases escaped into that portion of the building where O'Brien was directed to go, and that, being overcome by inhaling said gases, he fell to the floor, causing the injuries from which he died,"—in short, the charge in the declaration is, that the fall of the deceased was caused by inhaling poisonous gases negligently permitted to escape by the defendant, while the defence is, that it was a mere accidental fall, occasioned by the defendant's own negligence. It is true, that in addition to this, other matters collateral to the main issue are urged by way of defence. For instance, it is claimed that the defendant had no notice of the defective condition of the machinery, or of the fact that the gases were escaping. It is also contended that O'Brien was not, at the time of the accident, acting under directions of Burns, but of one Byerly, and that the latter ordered O'Brien to use a longer ladder in his ascent to remove the boards. Yet all these collateral matters, as well as the main issues above mentioned, are conclusively settled against the appellant by the judgment of

the Appellate Court, and we shall not, therefore, follow counsel in their discussion of these questions.

Nor do we propose to consider, in detail, all the objections to the admission and rejection of testimony. Some of them are so highly technical as not to deserve serious consideration. This is well illustrated by the first point made in appellant's brief. Witness Clark, when on the stand, was shown a plat of the gas works, upon which was represented, among other things, the smoke-stack or escape pipe, and counsel for plaintiff was permitted, against the objection of the defendant, to ask the witness (indicating on the plat) if the stack was in position, to which the witness replied that it was not,—and this is complained of by counsel. They insist that the tendency of the question and answer was to leave the impression on the minds of the jury, that the stack, being out of position, conduced in some way to the escaping of the gas. We see no force in the objection. If such was the tendency, and the inference was a false one, it was easily met by countervailing testimony. It was not only competent, but we think proper, to show the place of the accident and all its surroundings. The stack was a part of the gas works, and was used in manufacturing gas, and as such there was no impropriety in having it pointed out to the jury, as was done; and if it was detached, however inconsequential that fact may have been as part of the surroundings or *res gestæ*, there was nothing improper in showing it.

Of the same character is the point made on the testimony of Dr. George W. Mason, a witness of apparently enlarged experience, both as a student and teacher of chemistry. After having stated that the gases produced by combustion of hard coal were principally carbonic acid and carbonic oxide, with admixture of sulphurous acid gas, and having described their nature, character and effects upon the human system, the witness was asked this question: "If you have had any experience with this kind of gas, tell what it is." This ques-

tion was objected to, and the objection is renewed here in an extended argument. We perceive no objection to it whatever. The plaintiff was proceeding upon the hypothesis that O'Brien had been overcome by poisonous gases produced by the combustion of hard coal. To succeed, it was necessary to show what kind of gases, if any, were thus produced, their nature and effect upon the human system; and to enable the jury to intelligently determine the weight to be given to the evidence offered for such purpose, it was eminently proper to ask the witness what experience he had had with the gases of which he had spoken. The object of the inquiry was to show the witness' qualifications, rather than the presence and effect of such gases under different circumstances. His practical experience with them is what was called for, and the fact that his answer gave a practical illustration, as it did, of a part of his general knowledge and experience on the subject, was not at all improper, and could not possibly have prejudiced the defendant. The right of a witness to testify as an expert, in any case, will depend either upon the previous study and scientific research of the witness, or upon his actual experience with respect to the subject of the investigation, and often upon both combined. Here, the witness, after having shown his opportunities, both as a student and teacher, of obtaining a theoretical knowledge of the subject, clearly had the right to state what, if any, practical personal experience he had had with these gases. We repeat, this was eminently proper, and does not at all conflict with the rule laid down by Greenleaf, as is supposed by appellant's counsel.

Without pursuing this subject further, suffice it to say, in general terms, that after a very careful examination of all the questions raised by counsel relating to the admission and exclusion of testimony, we are unable to discover any substantial error for which the judgment in this case should be reversed.

No serious objections are urged against the plaintiff's instructions, except against the second, which is as follows:

"If you believe, from the evidence, that George B. Burns, at the time of the injury to Patrick O'Brien, was superintendent of the defendant gas works, and was by defendant duly authorized to hire and discharge, manage, direct and control its employes and workmen, and that O'Brien was one of its employes, and if you further believe, from the evidence, that poisonous or dangerous gas was permitted, wrongfully and negligently, as plaintiff alleges, to be in the generator-room of said gas works, and that said Burns ordered or directed the said O'Brien to move lumber or do work in a portion of said room where you believe, from the evidence, such gas would endanger his life or safety, and if you further believe, from the evidence, that such danger was not known to the said O'Brien, but was known to the said Burns and the defendant, and if you further believe, from the evidence, that the said O'Brien, without such knowledge, *or* any fault *or* negligence on his part, *but* in obeying or carrying out the order of said Burns, was made dizzy or overcome by said gas, and was thereby thrown down and injured, so that he died from the injury,—in that case the defendant is liable for the pecuniary injuries sustained by the widow and next of kin of the said O'Brien, by reason of his death, not exceeding $5000, so far as the same is shown by the evidence."

Counsel say of this instruction: "Applying to the words we have italicized ("or" and "but") the meaning given them by the lexicographers, this instruction misstates the law in several particulars. The disjunctive 'or,' separating knowledge, fault, and negligence, leaves the jury at liberty to find for appellee, so far as O'Brien's knowledge is concerned, if the evidence shows merely that he did not actually know of the danger, regardless of whether he might have known by the exercise of ordinary care." It may be conceded that the instruction is not technically accurate if tested by the

strict rules of grammar, but we do not understand that instructions are necessarily to be thus tested. The important inquiry in this, as in every case, is, in what sense did the jury understand the instruction. As understood by them, was it correct? By mere inadvertence, or for want of knowledge of its proper use, the word "or" is often used for "and," and we have no doubt it was so used in the instruction where it occurs after the word "knowledge." But the difference in the use of the two words in that connection would probably be noticed by but few, and certainly no one would be misled by it. While the scholar might see the verbial inaccuracy, yet, as to what was meant and intended by the instruction, he would come to the same conclusion the unlettered juror would. That part of the instruction which is criticised, told the jury, in substance, as we construe it, and as we have no doubt they understood it, "that if they believed, from the evidence, that Burns and the defendant had knowledge of the danger to which O'Brien was exposed, and that the latter, without such knowledge, *and* without any fault or negligence on his part, except in obeying and carrying out the order of Burns, was made dizzy and overcome by the gas," etc., the defendant would be liable.

But conceding the instruction is equivocal, and was liable to mislead if standing alone, yet when read in connection with the defendant's own instructions, there is not the slightest foundation for such a claim. Whatever errors may be found in plaintiff's instructions, are, if possible, more than cured by the defendant's. The defendant's instructions, doubling in number those asked or given for the plaintiff, are unusually full, covering every possible phase of the case favorable to the defendant, and going to the very verge of the law on every point, and in one or two instances probably beyond it. Such being the case, we can say with confidence the defendant has no cause to complain on the ground the instructions, as a whole, are unfavorable to it. Any doubt of

the justness of this statment will vanish in a moment by simply reading the defendant's instructions and the criticisms made upon the plaintiff's. If any one has cause to complain of the instructions, it is the plaintiff, and not the defendant.

In conclusion, it may not be improper to call attention more particularly to a matter already adverted to, and which appellant has kept well to the front throughout the entire case, both here and in the courts below. It is the claim that at the time of O'Brien's death he was acting under the orders of Byerly, and not Burns, and that his not heeding the suggestion of Byerly to use a longer ladder in ascending to the place of danger, the deceased was guilty of such contributory negligence as to prevent a recovery. As already stated, these were all subordinate issues of fact, which have been conclusively settled against the appellant. But it is complained the court refused to give the necessary instructions on this subject. The defendant's sixth refused instruction is a fair sample of all that were asked and refused on this branch of the case. It is as follows:

"The court instructs the jury, that if they believe, from the evidence, that the deceased, Patrick O'Brien, at the time he started to go up to the top of the generator-room, was told by the witness Byerly not to go the way he did go, but to take a long ladder and go on it, and that O'Brien refused to obey Byerly, and in consequence came to his death, then the court instructs the jury that they should find for the defendant."

Now, it is manifest that this instruction was well calculated to leave the impression upon the minds of the jury that the neglect or refusal of O'Brien to procure a longer ladder, as suggested by Byerly, was, of itself, evidence of negligence on the part of O'Brien, whereas it really had nothing to do with the question. It was the duty of the deceased to adopt that course which was freest from danger, if there was any difference in the two ways. That is what the law required. Whether

the course suggested or the one pursued was the less hazard-ous, was a question for the jury, wholly unaffected by the fact that a direction or order was given by Byerly on the subject. It is true, that if, in obedience to the master's command, a servant does an act which is not manifestly dangerous, re-sulting in an injury to the latter, the master will be held liable; yet this rule is not true *e converso.* Or, in other words, if the master orders a thing to be done, he will not be exon-erated from liability merely because the servant does not do it in the particular way directed by the master, unless that should be the safer way. As before stated, the question, in every such case, would be, whether the servant pursued the less dangerous course. It would be a strange rule, indeed, to exonerate the master merely because he had commanded a more dangerous course than the one actually pursued.

But the instruction, as a whole, was objectionable in another respect. It was calculated to divert the attention of the jury from the main issue in the case. The frictional point upon which the whole case turned, was, whether O'Brien's fall to the floor was caused by the inhaling of poisonous gases, or whether it was an accidental fall. If it was an accidental fall, then the plaintiff was not, under the pleadings, entitled to recover at all, without regard to whether any orders were given by Byerly or not. On the other hand, if the deceased fell from the effect of the gas, it is wholly immaterial how he made his ascent to the boards,—whether upon a long ladder or a short ladder. The length of the ladder could have had nothing whatever to do with the fall. To the suggestion he might have got up or down sooner on a long ladder than a short one, that is simply frivolous. When it is conceded the defendant negligently permitted the gases to escape, and that the deceased, in obedience to its orders, and without knowl-edge of their presence, exposed himself to them, and thereby lost his life, the law will not stop to split hairs or count seconds, for the purpose of determining whether the deceased

might not have shortened his exposure a second or two by ascending to the place of danger on a longer ladder than the one used, in order to defeat a recovery.

The judgment will be affirmed.

*Judgment affirmed.*