ᵛ

JENNIE S. HART, BY HER NEXT FRIEND, v. GEORGE WALKER.

*Assault—Evidence—Instructions to jury.*

1. In an action against a farmer by a domestic, who had been in his employ, for carnally knowing the plaintiff against her will, the defendant testified on his direct examination that, on numerous occasions when he came home Saturday nights from a neighboring village, he found the plaintiff and a young man with whom she was keeping company, sitting in a hammock. And it is held that it was permissible for the plaintiff to cross-examine the defendant relative to his staying out late Saturday nights at said village, for the purpose of negativing his opportunity for witnessing alleged familiarities between the parties in the hammock.

2. No objection was made to this line of cross-examination until the defendant had testified that he had frequently remained at said village until 12 o'clock at night, and had volunteered the statement that he did not stay later than any other farmer who had business there, whereupon he was asked if there were many farmers that stayed there as late as 12 o'clock at night, which question was objected to. And it is held that, in view of the voluntary statement of the witness, it was not error to permit the question to be answered.

3. Defendant was asked on cross-examination whether he had any trouble with a certain girl who had worked for him just previous to the time the plaintiff entered his employ, and, after the court had indicated that he would exclude the proposed testimony, the objection to its introduction was withdrawn, and the inquiry allowed to proceed. At its close the defendant was asked if he knew another girl, naming her, and was allowed to answer, under objection, that he did; and, on the objection of his counsel, the court excluded any inquiry as to his relations with this girl. And it is held that the proposed testimony was incompetent, but, in view of the waiver of the former objection to this line of inquiry, it cannot be said that the mere preliminary question as to whether the defendant was acquainted with the girl, and his affirmative answer, prejudiced his rights.

4. The defendant's counsel, on cross-examination of the plaintiff,

emphasized the fact that one Lindsay, an employé of the defendant, slept in a room adjoining the one occupied by the plaintiff, and plaintiff was permitted to show on the cross-examination of the defendant that, at a previous term of court, the defendant had procured a continuance on an affidavit showing that Lindsay was a material witness, and that defendant expected to prove by him that he slept in said adjoining room during the time of the alleged assault upon the plaintiff, and heard no outcry; that defendant knew the whereabouts of Lindsay, but did not produce him, and had concluded not to call him after having had a conference with him. And it is held that such cross-examination was competent to rebut the inference which the defendant sought to draw from the failure of plaintiff to produce Lindsay as a witness in her behalf.

5. The defendant's wife, who, for the purpose of giving the jury the impression that the plaintiff was pregnant during the time she was a member of the defendant's family, had testified that, during that time, plaintiff had morning sickness, was asked on cross-examination at what stage of pregnancy morning sickness occurs. And it is held that this was competent as affecting the candor and credibility of the witness.

6. The weather records, kept at the insane asylum at Kalamazoo, 12 miles distant from the defendant's residence, were received as rebutting evidence in favor of the plaintiff, the state of the weather having been made material by the claim on the part of the defendant that it was so hot on the night of the alleged assault that the family was compelled to sleep with the doors and windows open. And it is held that the testimony was admissible, under the rulings in *DeArmond v. Neasmith*, 32 Mich. 231; *People v. Dow*, 64 Id. 717.

7. The instructions set forth in the opinion, taken as a whole, are held to have clearly conveyed to the jury the understanding of the court that there could be no recovery unless the intercourse was effected by force and against the will of the plaintiff, and whether this would or would not technically amount to the crime of rape is unimportant.

Error to Kalamazoo. (Buck, J.) Argued April 4, 1894. Decided May 22, 1894.

Trespass. Defendant brings error. Affirmed. The facts are stated in the opinion.

*E. M. Irish,* for appellant.

*Osborn & Mills,* for plaintiff.

MONTGOMERY, J.    Plaintiff recovered a verdict and judgment in an action of trespass, the charge in the declaration being that the defendant entered the bed in which plaintiff was sleeping, and then and there made an assault upon her, and with great force and violence, and against the opposition, resistance, and will of the plaintiff, unlawfully had carnal knowledge of her, and did then and there beget her with child.    The plaintiff was in the employ of the defendant as a domestic, and the plaintiff's testimony tended to show that he entered the room that she occupied, in the night-time, and overpowered her, and had intercourse with her; that she immediately arose, and prepared to leave the house the next morning, which she did; and that nine months later she gave birth to a child.    Numerous assignments of error are relied upon.

1. It is objected that plaintiff was allowed to cross-examine the defendant relative to his staying out late Saturday nights at Galesburg, during his married life.    The defendant had testified that, on numerous occasions when he came home at night, he found one Brown, who was paying attention to the plaintiff, seated with her in a hammock.    It was permissible for the plaintiff to enter into an inquiry which would tend to negative defendant's opportunity for witnessing alleged familiarities.    We would have some doubt as to whether the inquiry in this line was not extended too far, were it not for the fact that the record shows that no objection was made to the line of examination until the witness had testified that he had frequently stayed out nights until 12 o'clock, and then volunteered the statement that he did not stay later than any other farmer who had business there.    The plaintiff's counsel then asked the question: "Were there many farmers around there that stayed down as late as 12 o'clock at

night?" It was this question that was objected to, and the witness was permitted to answer. In view of the statement volunteered by the witness, we do not think it was error to permit this question to be answered.

2. Defendant was interrogated with reference to his relations with another girl, by the name of Van Huysen. The line of inquiry was opened up by a question as to another young lady who had worked for him just previous to the time that plaintiff came there. He was asked whether he had any trouble with her. An objection was made. The court indicated that he would exclude the testimony. Counsel then withdrew the objection, and allowed the inquiry to proceed. The next question after that subject was disposed of was: "Do you know a girl by the name of Van Huysen?" He was allowed to answer under objection that he did. Counsel for defendant then made objection as to any inquiry regarding his relations with the girl, and the court excluded the testimony. The testimony was clearly enough incompetent; but we do not think, in view of the fact that defendant waived his objection to the first inquiry in this line, that the mere preliminary question as to whether defendant was acquainted with Miss Van Huysen can be said to prejudice the defendant's rights. The question and answer, taken together, did no harm to the defendant.

3. Plaintiff's counsel was permitted to show on cross-examination of the defendant that, at a previous term of court, he had procured a continuance of the case on an affidavit showing that one Lindsay was a material witness; that he expected to prove by this witness that he slept in an adjoining room during the time that the alleged assault was made, and he heard no outcry. On the trial the defendant's counsel, on cross-examination of plaintiff, emphasized the fact that Lindsay did sleep in an adjoining room; and plaintiff's counsel, by this cross-examination,

sought to show that defendant, who had procured a postponement of the trial on the ground that the witness was an important one for him, knew the whereabouts of the witness, and yet did not produce him, and concluded not to call him after having had a conference with the witness. We think this was competent to rebut the inference which defendant sought to draw from the failure of plaintiff to produce the witness Lindsay.

4. The defendant's wife, on direct examination, had testified that plaintiff, during the time she was a member of the family, had morning sickness. It cannot be doubted that the purpose of this was to give the jury the impression that the plaintiff was then pregnant. On cross-examination she was asked at what stage of pregnancy morning sickness occurs. This was competent as affecting the question of the witness' candor and credibility. If it was her belief that such symptoms would not show themselves until a stage of pregnancy so late that the illness testified to could not be ascribed to the then pregnancy of the plaintiff, it would tend to show that she had intended to leave a false impression. Furthermore, her answer could not have damaged the defendant. It was as follows: "From my experience there is a difference in cases. Some from the very beginning have such sickness; others would not commence for perhaps a month."

5. The weather records, as kept at the asylum at Kalamazoo, 12 miles away from the scene of the alleged assault, were received in evidence, the state of the weather having been made material by the claim on the part of defendant that it was so hot on the night of the alleged assault that the family was compelled to sleep with the doors and windows open. This testimony was objected to; but we think it was admissible, under the rulings of this Court in *De Armond v. Neasmith,* 32 Mich. 231, and *People v. Dow,* 64 Id. 717.

6. Exception is taken to the following instruction:

" In order to entitle the plaintiff to recover in this case, it is not essential that you should be satisfied from the evidence that the defendant assaulted her with such force and violence as to constitute him guilty of the crime of rape. If he had carnal intercourse with the plaintiff against her will and consent, and in spite of her resistance, and under the circumstances claimed by her in this case, she will be entitled to a verdict."

These instructions should be construed in connection with the other portions of the charge. The circuit judge also said to the jury upon this subject:

" If you are satisfied from the evidence that the plaintiff, in consequence wholly of terror or fear of defendant, refrained from making any outcry against the conduct of which she complains that he was guilty towards her, that then, under such circumstances, the fact that she made no outcry might be assumed by you to be unimportant, although it would be your duty to consider that fact with all the other facts in the case."

Again:

" It is incumbent upon the plaintiff to prove, not only that the defendant had sexual intercourse with the plaintiff, but also that such intercourse was without her consent and against her will. As has been said to you, it would not be necessary that she should make the utmost resistance of which she was capable, in order to entitle her to maintain her action; but it would be necessary that the intercourse should be against her will and without her consent, else her action must fail. If she was willing that the intercourse should take place, or if she made no resistance or objection to it, then she should not maintain this action."

These instructions, taken as a whole, we think, clearly conveyed to the jury the understanding of the court that there could be no recovery unless the intercourse was effected by force and against the will of the plaintiff. Whether this would or would not technically amount to the crime of rape is unimportant. We are fully satisfied

that the jury could not by any possibility have been misled by these instructions. The issue was one of veracity between the two parties to the suit. If the plaintiff's version of what took place was true, then, as matter of law, the defendant was liable in this action, and under the declaration as it was framed. If, on the other hand, the defendant's denial was believed, there could be no recovery.

We think there was no error committed on the trial to the prejudice of the defendant, and the judgment will be affirmed, with costs.

The other Justices concurred.