PEOPLE *v.* THACKER.

1. JURORS—CHALLENGE FOR CAUSE.

It is good ground for challenge of a juror:

(1) That he has served as a juror upon the regular panel in the same court within a year previous to such challenge. 2 How. Stat. § 7584.

(2) That, though chosen from the regular panel, his name does not appear upon the assessment roll of his township or ward. 2 How. Stat. §§ 7554, 7555.

2. CRIMINAL LAW—QUALIFICATIONS OF JURORS—PREVIOUS KNOWLEDGE OF CASE.

One is not disqualified from serving as a juror in a criminal case simply because he has heard and read about the case, and has formed an impression based upon what he has heard and read, if the impression is not of that fixed character which repels the presumption of innocence.

3. SAME—CHALLENGE FOR CAUSE.

Upon a prosecution for murder by poisoning, it appeared from the examination of a juror that he had talked with a member of the coroner's jury, who had told him the facts as he understood them; that he had talked with many other persons, and had been told that poison had been found in the stomach of the deceased, and had believed what they told him to be true, and that it would require evidence to remove the opinion formed from such statements. *Held*, that the juror should have been excused for cause.

4. SAME—EXCUSING JURORS—DISCRETION OF COURT.

It is not error for the circuit judge to excuse a juror, before he is sworn, because his business would suffer if he were compelled to serve, though done in the absence of counsel for respondent.

5. SAME—ASSISTANT PROSECUTOR—QUALIFICATIONS—RESIDENCE.

Under 1 How. Stat. § 560, authorizing the prosecuting attorney, under the direction of the court, to procure assistance in the trial of felonies, he may secure an assistant who is not a resident of his county.

6. SAME—EXPERT TESTIMONY—PHYSICIANS—POISONS.

A practicing physician who has given the subject of poisons careful and discriminating study by reading and listening to

lectures of instructors who have made a specialty of the subject, so that his study has resulted in the formation of a definite opinion, may express his opinion as to whether a given case is one of poisoning or not, although he has never had actual experience in poisoning cases.

7. SAME—EVIDENCE—SIMILAR CRIMES—INTENT.

On the trial of a respondent for the murder of his wife by poisoning, the prosecution was permitted to introduce testimony tending to show that, at the same time he was claimed to have been poisoning his wife, he was also administering poison to her sister, who was an inmate of his household. *Held,* that, if there was evidence in the case that the respondent had administered poison to his wife, said testimony was competent as bearing upon his motive or intent in doing so, but that it was error to instruct the jury that they might consider said testimony for the purpose of establishing whether the respondent in fact administered poison to his wife as charged.

Error to Benzie; Aldrich, J.    Submitted January 30, 1896.    Decided March 24, 1896.

William H. Thacker was convicted of murder in the first degree, and sentenced to imprisonment for life in the state prison at Jackson.    Reversed.

*Wilson & Bailey* and *Dodge & Covell*, for appellant.

*Fred A. Maynard*, Attorney General, and *D. G. F. Warner*, Prosecuting Attorney (*E. S. Pratt*, of counsel), for the people.

MOORE, J.    The respondent was informed against in the county of Benzie for the murder of his wife, Anna Thacker.    He was convicted, and sentenced to the state prison for life.

More than 100 errors are assigned.    The first group it will be necessary to consider relates to the challenging for cause of jurors.    The respondent exhausted his peremptory challenges, and was not satisfied with the jury then obtained.

The juror Krause was challenged on the ground that he had served on the regular panel within a year. 2 How. Stat. § 7584, reads:

"It shall be a good cause of challenge to any juror in any court of record in this State, in addition to the other causes of challenge allowed by law, that such person has served as a juror upon the regular panel or as talesman in such court at any time within one year previous to such challenge."

The challenge should have been sustained.

Mr. McNeal was challenged because his name did not appear upon any assessment roll in said county, and because he was not a taxpayer in said county. The statute applicable to this challenge is found in 2 How. Stat. §§ 7554, 7555. It clearly contemplates that jurors must be selected from persons whose names appear on the assessment roll of the township or ward, and this was so held in *Schlacker* v. *Mining Co.*, 89 Mich. 253. See, also, *Wise* v. *Lumber Co.*, 86 Mich. 40. The challenge should have been sustained.

The next assignments of error to be considered relate to the ruling of the court in overruling the challenges for cause to jurors, upon the ground that they had read and talked about the case, and had formed an impression as to the guilt or innocence of the accused that would require testimony to remove.

It has been repeatedly held in this State, and may be regarded as the well-settled law, that one is not disqualified from serving as a juror simply because he has heard and read about the case, and has formed an impression based upon what he has heard and read, if the impression is not of that fixed character which repels the presumption of innocence. 2 How. Stat. § 9564; *Holt* v. *People*, 13 Mich. 228; *People* v. *Shufelt*, 61 Mich. 237; *People.* v. *Gage*, 62 Mich. 271. In *Holt* v. *People*, 13 Mich. 228, it was said:

"To require that jurors shall come to the investigation

of criminal charges with minds entirely unimpressed by what they may have heard in regard to them, or entirely without information concerning them, would be, in many cases, to exclude every man from the panel who was fit to sit as a juror."

This opinion was approved in *Stephens* v. *People*, 38 Mich. 739.

In *People* v. *Barker*, 60 Mich. 287, it was held that—

"The opinion entertained by a juror which disqualifies him is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already."

In the case at bar, the juror Collier stated that he had heard what purported to be the facts in the case; that, from what he had heard, he had formed a conditional opinion as to the guilt or innocence of the respondent; that he still retained that opinion; that it would take evidence to remove it.

"*Q.* Could you listen to the law and evidence as it would be given in this case in open court, and on that, solely, decide your verdict?

"*A.* Yes, sir.

"*Q.* Have you talked with Mr. Waterbury about this case?

"*A.* I have heard him talk; yes, sir.

"*Q.* Did he tell you the circumstances of the case as he understood them?

"*A.* Yes, sir.

"*Q.* Did what he said lead you to form an opinion as to the guilt or innocence of the defendant?

"*A.* If true, if what he stated is true, I formed an opinion.

"*Mr. Wilson:* Mr. Waterbury is on the information as a witness in this case, and I challenge the juror for cause.

"*The Court:* Have you any opinion as to whether what he stated is true or not?

"*A.* I suppose he stated according to his idea. I have heard this thing talked from the time it transpired until the present time, by different ones.

"*The Court:* From all you have heard, have you formed any opinion?

"*A.* No positive opinion; no, sir.

"*The Court:* You verily believe you could hear the evidence in this case, and sit as a fair and impartial juror until after hearing the evidence and charge of the court, and render a fair and impartial verdict, without reference to any opinion you have in the case?

"*A.* That is the opinion I have."

The court declined to excuse the juror, and Mr. Wilson then questioned him further:

"*Q.* Have you heard any of the statements made by Waterbury to you disputed?

"*A.* I don't know as I have.

"*Q.* If you believed them then, you believe them now?

"*A.* Oh, yes, sir.

"*Q.* You say you have talked with a great many persons about this case?

"*A.* Yes, sir.

"*Q.* Did you ever hear any one state that poison had been found in her stomach?

"*A.* Yes, sir.

"*Q.* You believed that, did you?

"*A.* Yes, sir.

"*Q.* You have never heard it disputed?

"*A.* No, sir.

"*Q.* You knew that Mr. Waterbury was one of the jury at the coroner's inquest?

"*A.* Yes, sir.

"*Q.* You talked with him after the inquest had been held, did you?

"*A.* Yes, sir.

"*Q.* Did any of this lead you to form an opinion at that time as to the guilt or innocence of the defendant?

"*A.* I say as before, no positive opinion.

"*Q.* Would you require evidence in the trial of this case to disprove the statements you have heard made about it?

"*A.* Certainly; yes, sir.

"*Q.* Then you would enter upon the trial of this case at least with some opinion in the matter, wouldn't you?

"*A.* Why, I suppose so.

"*Q.* It would take evidence to remove that opinion?

"*A.* Yes, sir."

Mr. Wilson renewed his challenge. The juror said:

"My verdict would have to be innocent until there was some proof of his guilt.

"*By the Court :* Have you any opinion as to the truthfulness of the various reports and statements you have heard, on the one side or the other of this case?

"*A.* I believe them to be true, according to their understanding, of course.

"*Q.* Have you any opinion as to whether they were really true or not?

"*A.* I am unable to say."

The court overruled the challenge, and the defendant excepted.

In the case of *People* v. *Barker*, *supra*, it was held, in addition to what has already been cited, that—

"The sources of information are important in determining the effect likely to have been produced upon the mind of the juror, and the influence likely to be exerted upon his judgment; but the human mind is so constituted that impressions made upon it which lead towards certain conclusions, whether reached or not, will always require other impressions to be made to eradicate the former ones; * * * in other words, will require some evidence to remove them. We all are conscious that notions entertained by us are not all of the same stable character, and range all the way from conviction, which is the ultimate effect of ratiocination, to the passing comment or idle words that leave no permanent impression. The question, therefore, must be always one of degree; and the trier is called upon to determine whether the opinion entertained by the juror is of that fixed or permanent character which disqualifies him from coming to the case in a fair, candid, and impartial frame of mind, which is unaffected with prejudice or favor to either party."

In that case it was held that the juror was disqualified. A like holding was had in the case of *Stephens* v. *People*, 38 Mich. 739.

In the case at bar the juror had talked with a member of the coroner's jury, who told him the facts as he understood them. He had talked with many other

persons, and had been told that poison had been found in the stomach of Mrs. Thacker, and had believed it to be true. This fact, if it was a fact, that poison was found in the stomach of Mrs. Thacker, was one of the most important things in the case for the people to establish. A juror who believed that fact to exist cannot be said to be in a condition to act fairly, candidly, and impartially. The juror Collier should have been excused for cause. *Stephens* v. *People,* 38 Mich. 739; *Churchill* v. *Alpena Circuit Judge,* 56 Mich. 540; *People* v. *Shufelt,* 61 Mich. 237; *People* v. *Evans,* 72 Mich. 367.

Mr. Smith, a juror, was excused by the court, in the absence of counsel for respondent, because his business would suffer if he was compelled to serve as a juror. This is alleged to be error. The juror may be excused at any time before he is sworn, for any reason personal to himself, which seems sufficient to the judge. *People* v. *Carrier,* 46 Mich. 442. It was not error to excuse this juror.

Mr. Pratt, who assisted the prosecuting attorney, was not a resident of Benzie county. It is claimed that he was disqualified from acting in the capacity of prosecuting officer by reason of his nonresidence. So far as we can find, the question is a new one in this State. 1 How. Stat. § 560, provides that the prosecuting attorney may, under the direction of the court, procure assistance in the trial of felonies. It has been repeatedly held that this may be done. *Meister* v. *People,* 31 Mich. 99; *Sneed* v. *People,* 38 Mich. 251; *Ulrich* v. *People,* 39 Mich. 245; *People* v. *Bemis,* 51 Mich. 422; *Webber* v. *Barry,* 66 Mich. 137; *People* v. *Fuhrmann,* 103 Mich. 593. In all of these cases great stress is laid upon the fact that the attorney so employed must be impartial and disinterested. To hold that the person so employed must be a resident of the county would have the practical effect, in newer counties, where there are but few attorneys, of depriving the prosecuting officer of any assistance, while there is no limit to the number of able counsel with which the re-

spondent may surround himself if he or his friends are able to employ them. In the absence of any decision to that effect, we are not inclined to hold Mr. Pratt disqualified because of his nonresidence.

Dr. Dean was a witness for the people. He was graduated from the Michigan College of Medicine and Surgery in March, 1894, since which time he has been in the practice of his profession. He studied medicine for four years before graduation, and spent one year in the practice of medicine in the hospital in Detroit, under the instruction of the hospital physician. He was called to attend Mrs. Thacker during her last illness. In his testimony he described in detail her condition, appearance, and actions, and his treatment of her. He was asked whether he saw any evidence that led him to suspect that Mrs. Thacker had been poisoned. This was objected to, on the ground that Dr. Dean had not shown himself competent to testify; that it did not appear that he had ever treated a person who had been poisoned, or had ever seen one treated by other physicians. The objection was overruled, and he was allowed to testify. This brings us to the question as to whether a practicing physician, who has read the books and had the benefit of instructors until his mind is so well trained that he is able to take his degree as an M. D., and who is authorized by the law to practice medicine, and to prescribe remedies for persons who have been poisoned, either by accident or design, may express his opinion as to whether a given case is one of poisoning or not, or whether, in addition to the above qualifications, he must have had actual experience in poisoning cases before he can testify. The authorities are conflicting. In *Soquet* v. *State*, 72 Wis. 659, it was held that on a trial for murder, by poisoning, a medical witness is not qualified to give an opinion that the symptoms of the last sickness of the deceased indicated poisoning by arsenic, where he has never seen a case or had any experience whatever in cases of arsenical poisoning, and all that he knows on

the subject is derived from medical or scientific books and medical instruction. In that case, neither of the witnesses called was a graduate of a medical college. The case of *Boyle* v. *State*, 57 Wis. 472, is cited by counsel to the same effect; but all that case holds is that medical books cannot be read in evidence, nor can expert witnesses testify to statements made therein, and it is also inadmissible to permit the reading of such books to the jury. In Rog. Exp. Test. p. 45, it is said:

"A witness otherwise qualified may express an opinion on a matter pertaining to his special calling or profession, although his knowledge of that particular matter has been derived from study, rather than from actual experience. It is the doctrine of the courts that study of a matter, without practical experience in regard to it, may qualify a witness as an expert."

On page 99 of the same authority, it is stated:

"The principle is well established that physicians and surgeons of practice and experience are experts in medicine and surgery, and that their opinions are admissible in evidence upon questions that are strictly and legitimately embraced in their profession and practice."

Many cases are cited.

In *Siebert* v. *People*, 143 Ill. 571, it was held that practicing physicians, who are graduates of a medical college, are competent to testify as experts on the subject of arsenical poisoning, although it is not shown that they have had any experience in poisoning cases. See. *State* v. *Terrell*, 12 Rich. Law, 321; *Mitchell* v. *State*, 58 Ala. 417; *State* v. *Wood*, 53 N. H. 484. On the subject of opinions based on study, an opinion pronounced by the late Justice CAMPBELL is of interest:

"No one has any title to respect as an expert, or has any right to give an opinion upon the stand, unless as his own opinion; and, if he has not given the subject involved such careful and discriminating study as has resulted in the formation of a definite opinion, he has no business to give it. Such an opinion can only be safely formed or expressed by persons who have made the scientific ques-

tions involved matters of definite and intelligent study, and who have by such application made up their own minds. In doing so, it is their business to resort to such aids of reading and study as they have reason to believe contain the information they need. This will naturally include the literature of the subject. But if they have only taken trouble enough to find, or suppose they find, that certain authors say certain things, without further satisfying themselves how reliable such statements are, their own opinions must be of very moderate value, and, whether correct or incorrect, cannot be fortified before a jury by statements of what those authors hold on the subject. The jury are only concerned to know what the witness thinks, and what capacity and judgment he shows to make his opinion worthy of respect. * * * Upon medical questions, while persons may testify whose knowledge is chiefly theoretical, there can be no question of the superior value of practical knowledge combined with theoretical, especially on such matters as involve the interpretation of symptoms and actions of the sick." *People* v. *Millard,* 53 Mich. 63.

Does it not follow, logically, that if the witness has given the subject of poisons such careful and discriminating study, by reading the literature of the subject, and listening to the lectures of instructors who have made a specialty of the subject, that his study has resulted in the formation of a definite opinion, that he may express it, and that, when expressed, it may be considered by the jury? We think so, and the jury should give the opinion so expressed just such weight as, in view of all the testimony, they think it is entitled to. No error was committed in the admission of the testimony of the medical witness.

A serious question is raised in relation to the testimony of Miss Spencer, and the charge of the judge in relation to it. Miss Spencer was a sister of Mrs. Thacker, and was an inmate of the Thacker household during the last illness of Mrs. Thacker. It was the claim of the prosecution that the respondent, at the same time he was poisoning his wife, was also poisoning Miss Spencer, and testimony was introduced which it is claimed tended to show

this to be true. In discussing the testimony upon this branch of the case, the learned trial judge made use of the following language:

"Testimony has been allowed in this case tending to show that poison was found in the food of one Charlotte Spencer, who was an inmate of Mr. Thacker's house, and a sister of his wife; that the powder was found at different times; and that it was put there by design. This testimony, if you find it to be true, can only be considered so far as it may tend to confirm, corroborate, explain, modify, or otherwise throw light upon, the question of whether the deceased came to her death by poison, and by whom said poison was administered. In other words, even if you should believe from the evidence that poison was found in the food of Miss Spencer, and that the same was placed there by the respondent for the purpose and with the intent to take her life, still you would not be justified in finding the respondent guilty of the offense charged, but you may consider this evidence in determining the facts as to the death of Mrs. Anna Thacker, and as to whether she came to her death by poison, and, if so, by whom the same was prepared or administered."

He further charged the jury that, in considering the question as to whether Mrs. Thacker died a natural death or was poisoned,—

"You may consider the testimony in relation to the powder found in the food and water prepared for Miss Spencer, and whether the same was poisonous, if you find such powder was found in her food and drink; and if, after a full and careful consideration of the evidence in the case, and all of it, you should find, beyond a reasonable doubt, that Anna Thacker came to her death, or that her death was hastened, by poison, then you can proceed to consider the further question as to the respondent's responsibility in relation thereto."

This was only another way of saying to the jury that, if they found the respondent poisoned Miss Spencer, it was probable he poisoned his wife; or, in other words, that evidence of an offense committed by the respondent of which he is not charged in the information may be con-

sidered to establish his guilt of the offense which is charged against him in the information.

In support of the admission of the testimony relative to the attempt to poison Miss Spencer, and the charge of the judge in relation thereto, we are cited to the recent case of *People* v. *Seaman*, 107 Mich. 348, where it was held that where a respondent was charged with manslaughter by abortion, and there was evidence that the premature birth resulted from accidental causes, and the evidence of guilt was circumstantial, it was not error to admit evidence that respondent procured other abortions within about a year previous to the one charged. Mr. Justice MCGRATH wrote a very exhaustive opinion in that case, in which he collated all the authorities bearing upon that subject. It will not be necessary to cite them in detail here, as they are easily accessible by a reference to that case. In deciding the case, the learned judge said:

"The general rule is that evidence shall be confined to the issue, and that, on a trial for felony, the prosecution will not be permitted to give evidence tending to prove the defendant guilty of another distinct and independent felony. There are, however, exceptions to this rule. The other offense may be part of the *res gestœ*, or the proof thereof may be admissible to show motive."

Then comes a citation of the cases, and the court adds:

"Some of these authorities would seem to be border cases, but they illustrate the tendency of the courts to allow the introduction of this class of testimony to repel the inference that the cause was an accidental one, in cases where such an inference might otherwise obtain. Upon principle and authority, it is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with

which the particular act was done, and to 'rebut the presumption that might otherwise obtain,"—citing many cases.

None of these cases go so far as to hold that, to establish the commission of the substantive act charged in the information, you can give testimony of the commission of other offenses. If there was evidence in the case at bar that Mr. Thacker had administered poison to his wife, it would have been competent, as bearing upon his motive or intent in administering the poison, to show that, at about the same time, he was giving poison to the sister of his wife, who was also an inmate of his household. Had the trial judge limited the use of this testimony to that purpose, there would have been no error; but when he went further, and informed the jury that they might consider this testimony for the purpose of establishing whether the respondent in fact administered poison to his wife, he went further than any of the cases go, and announced a doctrine that it would be exceedingly dangerous to follow.

It is not necessary to consider the other assignments of error. They are not well taken, or are not likely to be repeated.

The judgment of the court below is reversed, and a new trial ordered.

The other Justices concurred.