Decided 15 July, 1901.

## STATE *v.* SIMONIS.

[65 Pac. 595.]

Qualification of Expert Medical Witness.

1. The fact that a person is a licensed and practicing physician in Oregon in 1901 is not a sufficient qualification to testify as an expert on a question of poisoning, for it is quite possible that there may still be persons in the practice who have never had any professional education or passed any examination in medicine, as the first statute regulating the practice of medicine and surgery was passed only ten years since, and all persons who were then practicing were exempted from examination.

Expert Witness—Facts Relied on Must be Stated.

2. An expert, though thoroughly qualified as a witness, can not be permitted to give an opinion on facts known to him but not communicated to the jury; he must first detail to the jury the facts on which he bases his opinion.

Sufficiency of Objection to Testimony.

3. Objection to the qualification of a witness is not waived because no objection was offered when he was called and testified in the first trial, where, in a second trial, the transcript of his evidence in the former trial was offered, and objected to as not tending to support the allegations of the complaint, and as being irrelevant, incompetent, and immaterial.

From Union : Robert Eakin, Judge.

Charles Edward Simonis was convicted of attempting to kill by means not constituting an assault, and he appeals.          Reversed.

For appellant there was a brief and an oral argument by *Mr. Thos. H. Crawford.*

For the state there was a brief over the names of *D. R. N. Blackburn,* Attorney-General, *Samuel White,* District Attorney, and *J. C. Thomas,* with an oral argument by *Mr. White* and *Mr. Thomas.*

Mr. Chief Justice Bean delivered the opinion.

In October, 1900, an information was filed by the district attorney, charging the defendant with the crime of "attempting to kill by means not constituting an assault."

The jury disagreed on his first trial, but on the second he was found guilty, and sentenced to the penitentiary for three years, from which judgment he appeals, assigning numerous errors, the most important of which are the admission in evidence of the testimony of Doctor Merracle, and overruling defendant's motion, made at the close of plaintiff's testimony, and renewed after all the evidence was in, to direct a verdict of not guilty. As both assignments involve practically but one question, namely, the competency of the evidence of the physician, we shall confine our attention to that alone. The evidence for the state tended to show that on the eleventh of June, 1900, the defendant gave Nora Smith, a young girl, about fourteen years of age, two small paper packages, which he said contained complexion powders, requesting her to give the larger one to Miss Howell, and the other to Miss Wallace, whom she was on her way to visit, cautioning her to say nothing about the matter. On the next morning, as the three young ladies were going from the home of Miss Howell to a neighbor's, about two miles distant, and when within about half a mile of their destination, the Smith girl gave the packages to her companions, who immediately swallowed their contents. They remained about half an hour at the neighbor's, then started back, and when about halfway the two girls became quite sick, but managed to reach home, when Doctor Merracle was called, who prescribed for them, and they finally recovered. The doctor was a witness for the state at the first trial, but, as he was unable to be present at the second, the transcript of his testimony was admitted in evidence, and read to the jury, over the defendant's objection, upon the ground that it did not tend in any way to prove the allegations of the complaint, and was irrelevant, immaterial, and incompetent. He testified that he was a regularly licensed and practicing physician, and as such was

called to see Miss Howell and Miss Wallace, who were
reported to have been poisoned ; that he found the two
girls lying on the floor, suffering very severely with
cramps and pain in the region of the stomach ; that he
gave them emetic and hypodermic injections of apomor-
phine, which caused them to vomit everything off the
stomach ; that they suffered very severely for a while,
but he remained with them two or three hours, and when
he left they were apparently in fair condition, although
he still had great fears of the result ; that he attended
them six or seven days before they were out of danger.
Without any further showing of his qualifications to speak
as an expert, or any further detail of the symptoms, he was
asked the following question : '' Well, you may state to
the jury what their sickness indicated,— what the symp-
toms indicated to you as a physician,'' and answered :
'' The symptoms of the case indicated to me arsenious
poisoning.   Of course, I did n't make an examination of
the vomiting, or the sputum, or anything of that kind.''
He further testified that he did not make such examina-
tion because he was busy at the time, that later Miss
Howell had a sinking spell '' and collapse, such as I have
seen in these cases ''; that her heart stopped acting, and
her pulse was scarcely perceptible.

1.   Two principal objections are urged to the admission
of the doctor's testimony : (1) That he was not shown to
be qualified to express an opinion as an expert ; (2) that
his opinion, as given, was based upon facts not stated.
There is some conflict in the authorities as to whether
a medical witness is qualified on a trial for poisoning to
give an opinion that the symptoms indicate poisoning,
when his knowledge was not obtained from personal ex-
perience or observation : Rogers, Exp. Test. (2 ed.) § 42.

It is held in a well reasoned and considered opinion by ·
Mr. Justice ORTON in *Soquet* v. *State,* 72 Wis. 659 (40
N. W. 391), that a physician could not testify that certain
described symptoms indicated arsenical poisoning, when
all his knowledge about the symptoms of such poisoning
was derived from the study of medical works and his
instruction at a medical college.  But in an equally well
considered opinion by the Supreme Court of Michigan
(*People* v. *Thacker,* 108 Mich. 652, 66 N. W. 562), it is
held that a practicing physician, who is a graduate of a
reputable medical college, and who has sufficiently quali-
fied himself to have a definite opinion of his own, may
testify as an expert on the subject of poisoning, though
it is not shown that he has had any experience in such
cases.  But, whatever the rule may be in this particular,
the books all agree that, before one can testify as an
expert on that subject, it must first be shown that he is
qualified to do so, either by actual experience, or such
careful and deliberate study as enables him to form a
definite opinion of his own in reference to the matter :
*People* v. *Thacker,* 108 Mich. 652 (66 N. W. 562); *Siebert*
v. *People,* 143 Ill. 571 (32 N. E. 431); *Polk* v. *State,* 36
Ark. 117.  Indeed, the definition of an expert implies as
much.  It is one who has made the subject upon which
he gives an opinion a matter of particular study, prac-
tice, or observation.  He must have a particular and
special knowledge upon the subject ; and his competency,
which is a question for the court, must be shown before
he is permitted to testify: Rogers, Exp. Test. (2 ed.) § 15;
7 Am. & Eng. Ency. Law (1 ed.), 491.  There was no
proof as to Doctor Merracle's qualification to testify as an
expert, unless it is to be inferred from the mere fact that
he was a regularly licensed and practicing physician in ·
the state.  There was no evidence that he is a graduate
of any medical school, or had taken a regular course in

medicine, or been examined by the state medical board, or as to the length of time or extent of his practice, or his experience in cases of poisoning. His competency, therefore, was not determined by the court as a question of fact, which determination, under many of the authorities, would not be reviewable on appeal, unless an abuse of discretion was clearly shown : 8 Ency. Pl. & Pr. 749. The only question it had to pass upon was whether his being a regularly licensed and practicing physician was sufficient of itself, as a matter of law, to qualify him to give an opinion as an expert as to the cause of the symptoms of his patients ; and we think it was not. The act of 1889 regulating the practice of medicine provides that it does not apply to persons then practicing in the state, who, within a certain time, should cause their names and places of residence to be registered in the proper county office (Laws, 1889, p. 147), while by the acts of 1891 and 1895 (Laws, 1891, p. 153, and Laws, 1895, p. 63), such persons were to be taken and considered as licensed physicians. It follows that any one practicing medicine at the time the act of 1889 took effect, who complied with its provisions and the subsequent laws, would be a licensed physician, without any regard whatever to his knowledge or learning ; and, for all that appears, Doctor Merracle may belong to that class. The proof, therefore, that he was a licensed and practicing physician, is not, we think, sufficient to qualify him to give an opinion on a subject like the one under consideration when he testified. The witness may have been, and probably was, a thoroughly qualified and competent physician, entitled to testify as an expert ; but it can not be so assumed. The fact of his qualification should have been shown before he was permitted to testify, and especially in this case, where the only proof of poisoning was his opinion.

2. Again, it is an elementary rule in the law of expert testimony that in a case of this character a physician, although thoroughly qualified, can not be permitted to give an opinion upon facts known to him, and not communicated to the jury. He is first required to detail the symptoms ; then, if qualified, may be allowed to express an opinion based thereon. "This is necessary," says Mr. Rogers, "to enable the correctness of the opinion expressed to be tested by calling other experts, and obtaining their opinion upon the same state of facts. It is equally necessary to enable the jury to have the means of determining whether the facts upon which the opinion is predicated were correct or not": Rogers, Exp. Tes. (2 ed.), § 36. In *Hitchcock* v. *Burgett*, 38 Mich. 501, a physician and surgeon testified to having made an examination of the plaintiff, and to the condition in which he found him. He was then asked : "Assuming that the leg was in good condition prior to the accident, what should you say to be the cause of the difficulty, as you found the patient last?" The question was objected to on the ground that the witness could not answer without assuming certain facts which it would be necessary to know in order to understand the value of the opinion, and the objection was held well taken.. The court said : " Even in cases where experts are called upon to give an opinion based upon their own personal observation or examination, the facts upon which the opinion is founded must all be stated ; otherwise, the witness might be giving an opinion, which would have great weight with the jury, upon a state of facts very different from those found by them in the case on trial. The value of the opinion, in other words, must depend very largely upon the facts on which it is based ; and there is, or may be, I suppose, such a thing as difference of opinion among experts, arising upon the same state of facts. The facts, therefore,

should always be stated, so that others may not only be able to determine the correctness of the opinion given, but that the jury may ultimately determine the truth or falsity of the facts stated, and thereby be enabled to give to the opinion the importance it is justly entitled to."

Again, in *Burns* v. *Barenfield*, 84 Ind. 43, a physician was permitted to give his opinion concerning the treatment of a patient, based upon his own examination, and it was held error, the court saying : "The opinion of an expert must be based upon proved or admitted facts, or upon such as are assumed for the purpose of a hypothetical question. The answer of the witness was not based upon facts stated by him. What he knew about the case might, and doubtless did, embrace much more than he had stated to the jury. How much or what he knew about the case was, in a great measure, unknown to the court and the jury. It is the clear right and duty of the jury to judge of the truth of the facts upon which the opinion of the expert is based. If his opinion is based upon what he may suppose he knows about the case, upon facts, it may be, altogether irrelevant, and unknown to the jury, it would be impossible for them to pass upon the truth of the facts upon which the opinion may be based, or to apply the opinion of the expert to the facts. Neither court nor jury can know the facts upon which the opinion rests. It is obvious that, where the expert delivers his opinion from what he supposes he knows about the case, he must assume and exercise both the functions of the court and the jury ; he determines that which he knows is both relevant and true. The relevancy of the facts must be determined by the court ; their truth by the jury. The witness can not pass upon such questions." This rule was not observed in the examination of Doctor Merracle, but he was asked to give his opinion, as a physician, as to what the general symptoms indicated.

The question was not so framed as to confine his opinion to the facts he had previously testified to, but was intended to call for his opinion, based upon all the facts within his knowledge, whether stated or not.   It would seem, therefore, that his testimony ought not to have been admitted for that reason.

3.   It is urged that the defendant is not in a position to object to the qualification of the witness, or his failure to detail the symptoms upon which his opinion was based, because no such objections were made at the time he was called and testified as a witness.   There might, perhaps, be merit in this contention if we were considering the competency of the doctor's testimony as given on the first trial; but he did not testify on the second trial, and, when the transcript of his evidence was offered, its admission was objected to because it did not tend to support the allegations of the complaint, and was irrelevant, incompetent, and immaterial, which was sufficient to cover the particular objections now urged to its admission.   For the errors hereinbefore pointed out, the judgment must be reversed, and a new trial ordered.

REVERSED.