STATE, Respondent, *v.* ASKIN, Appellant.

(No. 6,904.)

(Submitted September 28, 1931.   Decided October 8, 1931.)

[3 Pac. (2d) 654.]

*Mr. H. C. Crippen, Mr. Al. Hansen* and *Mr. Earle T. Pickering,* for Appellant, submitted a brief; *Mr. Crippen* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. T. H. MacDonald,* Assistant Attorney General, and *Mr. F. N. Hamman,* County Attorney of Carter County, for the State, submitted a brief; *Mr. MacDonald* and *Mr. Hamman* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant was found guilty of manslaughter and has appealed from the judgment entered on the verdict, and from the order denying his motion for a new trial.

The offense was alleged to have been committed on February 11, 1930. The defendant at that time was seventeen years of age, and the deceased, Charles E. Havens, of the age of sixty-two years. The record discloses that defendant, his brother, Bob Askin, and Wesley Striker, on the evening of February 11, were traveling south in a sedan on the road from Baker to Ekalaka, and the car ran partly off the road about nine miles north of Ekalaka, so that the front wheels were in a ditch. Charles Emerson and his father-in-law, Havens, traveling on the same road, but in a northerly direction in a model T Ford truck, at the request of the occupants of the sedan, stopped and tried to pull the sedan out of the ditch by means of a chain, one end of which was hitched to the rear of the sedan and the other to the rear of the truck. After an unsuccessful attempt so to do the chain was unfastened. The witnesses do not agree as to what transpired thereafter. It was at this place where the crime is claimed to have been committed.

Emerson, a witness for the state, testified that defendant, Bob Askin, and Striker went into the sedan while he and Havens were unfastening the chain. He then put the chain into the truck and defendant and Striker came to where he was standing at the back of the truck, and he told them that he was unable to pull them out and suggested that "they get a team." Bob Askin then came out of the car and struck at him. The witness said: "He did not say anything before he struck at me." He said, "Bob struck at me twice. The second time he struck at me I struck back at him. Striker started kicking at me and I backed up a considerable distance down the road. Then I saw Alva Askin strike the old man and he fell face down in the snow on the side of the road in the ditch. Then I spoke. I can't recall exactly what I said and then we went and picked Mr. Havens up and carried him back to the truck and put him in." He said defendant struck Havens on the side of the face near the right temple. When Havens was picked up he was insensible and was bleeding from the nose and mouth. He never spoke thereafter so that he could be understood. He was taken to his residence which was four or five hundred yards from where he fell and shortly after to the hospital where he died the next day at about 10 o'clock A. M. On February 12 Emerson found glasses and a mitten in the space between the two cars as they stood when the sedan was in the ditch, and also one mitten where the deceased fell. A cap was also found in that vicinity and blood stains were found in the snow where Havens fell. Emerson said: "There had been nothing said by anyone of the three that they were going to hit anybody. I did not at any time ask Bob why he hit me. I did not ask Alva why he hit the old man." On cross-examination he testified—and as to this there is no conflict in the evidence—that Havens had been paralyzed in the left hand and had been in a hospital in Alaska during the preceding summer for treatment.

There was evidence by the state that Havens' right eye was swollen, and that there was a contusion above the right eye, a bruise on his lip, and a cut across his forehead on the left

side. When brought to his house he was bleeding from the nose and mouth and he never regained consciousness. At that time he did not have his glasses, mittens, or cap. The autopsy revealed a clot of blood the size of a hen's egg at the base of the brain in the region known as the circle of Willis.

To prove that the blow struck by defendant was the cause of the death of Havens, the state called Dr. Blakemore, who said: "I am a physician and surgeon of this state and have been for twenty years. I am engaged in a general practice, such a practice as is ordinarily had in a rural community. I wouldn't say that practice includes surgery." Over objection of defendant, for want of proper foundation, he was then permitted to answer a hypothetical question giving his opinion as to the cause of death. His answer was: "I think it was due to the injury causing the blood clot, probably." In speaking of the effect of the blow assumed to have been struck with a fist, he said: "I would think that that would cause the hemorrhage, in my opinion it would."

Defendant contends that it was error to admit the opinion of Dr. Blakemore over his objection for want of proper foundation. The materiality of this evidence rests in the fact that defendant's contention was that Havens' death was due to apoplexy and not to a blow administered by defendant. Emphasis upon this point was made by the court's instructions to the jury advising them that, if they entertained a reasonable doubt whether the blood clot was produced by a blow given by defendant or came from natural causes, they should find the defendant not guilty. The defendant had shown that when Havens had suffered a partial paralysis of the left side in July, 1929, and was treated in a hospital in Alaska, he had a blood pressure of 280 millimeters and was advised by the doctor against any unusual exertion or excitement. Two qualified physicians testified for defendant that a blow would not, in their opinion, produce a blood clot on the inside of the brain where this was found. Defendant denied that he struck deceased. He said that Havens staggered and fell in the ditch, and that he grabbed for him, but did not "catch him."

The question then is: Is one who testifies that he has been a physician and surgeon of this state for twenty years engaged in general practice, qualified as an expert to give his opinion that a blow on the head with a fist was the cause of the blood clot or hemorrhage in the base of the brain in the region of the circle of Willis?

Opinion evidence is admissible on the ground of necessity ██ and finds its justification in the fact that the witness possesses superior skill or knowledge of the subject matter and is thus able to give the jury aid in arriving at a just determination of the question under consideration. (*Demarais* v. *Johnson, ante,* p. 366, 3 Pac. (2d) 283.) He need not be a physician and surgeon if he possesses the necessary experiential qualifications. (*State* v. *Harkins,* 85 Mont. 585, 281 Pac. 551.) Nor is it essential that he qualify as a specialist in the particular subject. (*Brisendine* v. *Hunt,* (Ga. App.) 158 S. E. 469; *Pridgen* v. *Gibson,* 194 N. C. 289, 54 A. L. R. 855, 139 S. E. 443, and authorities there cited.

But it is elementary that before one may testify as an expert ██ it must first be shown that he is qualified to do so, either by experience or the requisite study to enable him to form an opinion regarding the subject matter under inquiry. Our statute requires that he possess skill in the question concerning which his opinion is proffered. (Subd. 9, sec. 10531, Rev. Codes 1921.) The mere fact that the witness was a physician and surgeon, without evidence of actual experience in, or study of, the subject under consideration, is insufficient to qualify him as an expert. (*State* v. *Simonis,* 39 Or. 111, 65 Pac. 595.) If his statement that he has been a physician and surgeon of this state for twenty years implies that he was regularly licensed as such, there is nothing to indicate under what circumstances he became so. Under the laws in force at the time he entered the practice in this state it was provided: "Provided however, that in all cases where an applicant for a certificate under this section shall produce and exhibit to said Board of Examiners a certificate from a Board of Medical Examiners, duly appointed and existing under the

laws of any state of the United States and recognizing certificates or licenses from this state certifying to the fact that the person presenting such certificate is duly and well qualified to practice medicine and surgery in the state issuing said certificate, and that said Board issuing said certificate has subjected the applicant to a thorough examination to ascertain this fact, or certifying to the fact that the person presenting such certificate is duly and well qualified to practice medicine and surgery in the state issuing said certificate; *and to the further fact, if such is the case, that said applicant was exempt from examination under the provisions of the law of said state, by reason of his residence in said state in the active practice of medicine and surgery at the time of the passage in said state of said law requiring the examination of applicants to practice medicine and surgery;* he or she may, at the discretion of said Board of Examiners * * * receive from said Board of Examiners a certificate to practice medicine and surgery within this state. * * * '' (Sec. 1587, Rev. Codes 1907.)

It will thus be seen that it was possible at the time the witness entered the practice in this state to do so without examination either in this or some other state, and without being the graduate of any medical school. While the competency of a witness as an expert is a question addressing itself to the discretion of the trial court, whose decision will not be reversed unless erroneous as a matter of law (*State* v. *Harkins, supra*), where, as here, the only proof of his competency is the fact that he has been a practicing physician for twenty years, the decision of the trial court in favor of his competency as an expert witness was erroneous as a matter of law. (*State* v. *Simonis, supra.*)

It is worthy of note, also, that his cross-examination did not serve to supply the deficiency of the state's proof as to his competency. On his cross-examination it was developed that the witness had had no surgical experience of the skull and brain; that he had never before in his practice seen another blood clot of the character of the one in question in that posi-

tion; that he had never before held an autopsy on a similar case, and that he did not look up any authority to determine what would cause the blood clot. He thus failed to qualify as an expert on the subject. (*Sesser Coal Co.* v. *Industrial Com.*, 296 Ill. 11, 129 N. E. 536; *Peterson* v. *Grayce Oil Co.*, (Tex. Civ. App.) 37 S. W. (2d) 367.)

The court erred in overruling the objection of defendant to the hypothetical question propounded to Dr. Blakemore.

Since the cause must be remanded for a new trial, one other question must be considered. As a part of the state's proof, George Vinton, the official court reporter, was called to testify that he took notes at the coroner's inquest over the body of Havens and correctly transcribed them. A part of the testimony heard at the inquest was that given by defendant. Counsel for the state then stated: "We offer in evidence the officially transcribed notes of the coroner's inquest for the purpose of showing the presence of the defendant Askin, at the scene of the crime." Counsel for defendant announced that there was no objection, whereupon the court stated: "Let it be admitted." Thereupon counsel for the state read to the jury certain portions of the testimony given by the defendant at the inquest, omitting other parts. During the examination of the defendant, his counsel offered to read to the jury the remainder of the testimony given by him at the inquest, but on the state's objection he was denied the right to do so.

Whether any part of this testimony was admissible in the state's case in chief, without the consent of counsel for both parties, need not now be determined. Since all counsel consented that the evidence should be received, and since the whole was admitted, it was error to withhold any part of it from the consideration of the jury. Defendant made no offer of proof, and we are not advised as to the character of evidence thus excluded, and hence cannot say whether the ruling of the court was prejudicial to the substantial rights of the defendant. Upon another trial, if the whole of

the testimony of defendant given at the inquest is offered and received in evidence upon consent of counsel for both parties, it should be read to the jury in its entirety.

The judgment is reversed and the cause remanded to the district court of Carter county for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.