Argued February 19, affirmed April 26, reconsideration denied May 12,
petition for review allowed October 19, 1976
See 277 Or 503, 561 P2d 600

STATE OF OREGON, *Respondent,*

*v.*

REDGIE EUGENE SMALLWOOD, *Appellant.*

(No. C 75-04-1053, CA 5119)

548 P2d 1346

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellant.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

## FORT, J.

Defendant was indicted, tried and convicted by a jury of murder. ORS 163.115. He entered a plea of not guilty by reason of mental disease or defect. ORS 161.295, 161.300, and 163.125. He appeals from the resulting judgment.

The single assignment of error asserts violation of defendant's Fifth and Sixth Amendment rights in connection with certain testimony elicited from the state's psychiatrist. In considering the validity of these contentions it is important by way of background to note certain facts: (1) the challenged evidence came in on rebuttal after all of the defendant's witnesses had testified; (2) the defendant himself had testified on direct examination that he had inflicted an injury with a knife on the victim and had then fled from the scene; (3) defendant's attorney in his opening statement to the jury had stated that the only issue was that of defendant's mental condition,[1] and that defendant had inflicted the wounds by stabbing, from which the victim died; (4) the defense psychiatrist had already testified in detail about her examination of the defendant, and had reported statements defendant had made to her in the course of that examination about the killing and his actions surrounding the time thereof. She had then expressed her opinion that at the time of the killing defendant was suffering from a mental condition such that he "could not conform his conduct to the law."

By way of rebuttal the state called as its witness a psychiatrist who at its request had also examined the defendant following his ORS 161.295 plea. ORS

---

[1] From defense attorney's opening statement:

"The essential issue in this case is just what his state of mind was when this unfortunate incident took place and just what stage of legal responsibility he has in this. We will offer all we have on this issue. As I say, there's no issue in my mind that he performed the act that resulted in this young woman's untimely death. * * *"

161.305. The psychiatrist was permitted to testify[2] over appropriate objection that the defendant "exercised his constitutional rights," in that he refused to proceed with the first examination without having his attorney present; and also that at the second meeting, in part on advice of his attorney, he refused to discuss anything surrounding the occasion of the homicide or

[2]Samples of the state psychiatrist's testimony about defendant's exercise of his right to counsel are as follows.

After the witness was sworn and stated his qualifications, the following testimony took place on direct examination:

"Q   Have you in the course of your professional career had an occasion to perform a mental-status examination on the defendant in this case, Redgie Smallwood?

"A   I met with Mr. Smallwood on two occasions. One was on June 13th, 1975. I met with him for a very brief period of time. At that time he exercised his constitutional rights, and ——

"[Motion for mistrial heard and denied in absence of jury. Following the jury's return the record shows as follows:]

"THE COURT: I want to caution the jury that a defendant in this case and a defendant in every case has an absolute constitutional right not to make any statement that may tend to incriminate him, and if for any reason Mr. Smallwood declined to talk to Doctor Colbach, the fact that he declined to talk to Doctor Colbach is not to be taken by you, the jury, as any evidence tending to prove or disprove his guilt in this case. The only reason a psychiatrist's testimony is offered to you is to assist you in deciding the question of his mental state at the time of the act involved and not in deciding whether or not he committed any act.

"All right. Go ahead.

"MR. BIRKLAND [deputy district attorney]: Thank you.

"DIRECT EXAMINATION (Continuing)

"BY MR. BIRKLAND:

"Q   Doctor Colbach, now, you saw the defendant on two occasions?

"A   Yes, sir.

"Q   When is the first occasion?

"A   June 13th, 1975.

"Q   And for how long a period did you see the defendant on that day?

"A   I was probably with him for ten or fifteen minutes.

"Q   Did you advise him at that time that you were a psychiatrist requested by the State to examine him for the purpose of coming to a conclusion with regard to his mental responsibility for the alleged crime?

"A   Yes.

"Q   How did he respond to that?

"A   He said that he would like to confer with his lawyer or have his lawyer present, and then I attempted to make some contact with his

his involvement in the stabbing incident leading to the victim's death. The former is claimed to violate the defendant's Sixth Amendment right to counsel, and the latter his Fifth Amendment right against self-incrimination.

Defendant places principal reliance respecting the latter on *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968). In that case the trial court, after an insanity plea, had as a preliminary matter ordered the defendant to be examined by a psychiatrist for the state. It ordered him at that examination to answer any question concerning the crime with which he was charged. In a mandamus proceeding seeking the elimination of that order, and also of an order prohibiting his attorney from advising him not to answer any question which might tend to incriminate him, the court said:

> "We conclude that the only way in which the constitutional right of the defendant not to be compelled to testify against himself can be adequately preserved is to hold that the defendant cannot be required to answer the questions which the trial court's order requires him to answer, and the restrictions placed upon defense counsel by the trial court's order must be removed.
>
> "* * * * *

attorney, but we couldn't do it. We decided not to continue with the interview that day."

Samples of the state psychiatrist's testimony about defendant's exercise of his Fifth Amendment right not to incriminate himself are as follows:

"Q   Doctor, would the defendant discuss with you the details of the alleged crime?

"A   No, it was an understanding at the beginning of the interview that we would not talk about the crime at all. The defendant gave two reasons for this: One, he really did not trust me, and the second one is that he said he didn't want to talk about the victim out of some sense of honor to her.

"* * * * *

"Q   And what is your opinion, Doctor, as to whether or not he could appreciate the criminality of his conduct at the time of the alleged offense?

"A   Again, without talking to him, I really wouldn't want to venture, without his willingness to talk to me, about what was going on in his mind. I don't know. If I look at the police reports, it seemed like he certainly knew what was happening. He tried to get away and everything, but he's unwilling to talk to me. I don't think I want to offer an opinion on that."

"We are aware that in holding that the defendant cannot be compelled to answer the psychiatrist's questions we may be lessening the quality of the evidence available to the state. Psychiatrists have expressed the opinion that it is difficult, at least in some cases, to arrive at a competent opinion on the mental state of the defendant if the defendant cannot be questioned about the alleged crime. Krash, *The Durham Rule and Judicial Administration of the Insanity Defense in the District of Columbia,* 70 Yale L J 905, 918 (1961). We are of the opinion that this is a price that must be paid to enforce the constitutional protection." 250 Or at 293-94.

We conclude that that case does not set forth the answer to the question presented here: whether a psychiatrist in testifying *under the circumstances here present* may state (a) that the defendant during the first examination wanted his lawyer present before proceeding, and (b) that at the second he refused to answer questions which in his or his attorney's opinion might tend to incriminate him. The psychiatrist also testified that in the second interview he was unable for that reason to elicit from the defendant any information relating to defendant's explanation or awareness of the stabbing of the victim or the circumstances leading up to or immediately following the incident. Defendant's attorney was present at that second interview and recorded it. Because of the failure, therefore, to elicit any information surrounding the homicide he explained that he was unable to express an opinion on certain questions asked by the state (see footnote 2).

In *United States v. Baird,* 414 F2d 700 (2d Cir 1969), *cert denied* 396 US 1005 (1970), the court considered at length a case similar in certain respects to the case at bar. There the defense introduced in its case-in-chief the testimony of two psychiatrists to support the defendant's contention that the defendant was suffering from mental disease or defect at the time of the crime charged. This testimony included statements the defendant had made to them explaining what he did and why he was not responsible. The defendant himself did not testify. The court then allowed the gov-

ernment to have the defendant examined by a psychiatrist of its own choosing and permitted him to relate at trial over appropriate objection based on the Fifth and Sixth Amendments what the defendant had told him concerning the offense charged and his reasons for his acts in connection with it. On appeal the court said:

"* * * To rule that the Government's alienist may examine the accused and give his opinion testimony of the accused's mental condition does not rest upon or involve a waiver by the defendant of some known right of his, although it may be argued that this is just another way of saying the same thing. It is more accurate to say that a defendant who raises a defense based on criminal responsibility is estopped from making an effective objection to the Government's proceeding in this fashion when he, himself, has relied upon the same evidence-admissibility theory under circumstances such as those in the present case.

"The same reasoning applies to the use of the testimony of experts in relation to the insanity defense as it bears on the issue of wilfulness and the defendant is faced with the same estoppel. * * *" 414 F2d at 709.

We recognize that portions[3] of the holding in *Baird* cannot be reconciled with that reached by our Supreme Court in *Shepard v. Bowe,* supra by which we are bound.

The defendant here was not denied the right to claim the privilege against self-incrimination, nor was he denied the right to have his counsel present. He was in fact accorded all the rights he was assured under *Shepard v. Bowe, supra.*

The state contends that the doctor was entitled to explain the nature, circumstances and content of his examinations of the defendant in order that the jury could evaluate the weight to be accorded his testimony.

---

[3] The court also held that the defendant had no Sixth Amendment right to have his lawyer present at the examination. *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968), holds contra.

In *State v. Simonis,* 39 Or 111, 65 P 595 (1901), the Supreme Court, speaking through Mr. Chief Justice Robert S. Bean, said:

"Again, it is an elementary rule in the law of expert testimony that in a case of this character a physician, although thoroughly qualified, can not be permitted to give an opinion upon facts known to him, and not communicated to the jury. He is first required to detail the symptoms; then, if qualified, may be allowed to express an opinion based thereon. 'This is necessary,' says Mr. Rogers, 'to enable the correctness of the opinion expressed to be tested by calling other experts and obtaining their opinion upon the same state of facts. It is equally necessary to enable the jury to have the means of determining whether the facts upon which the opinion is predicated were correct or not': Rogers, Exp. Tes. (2 ed), § 36. * * *" 39 Or at 116.

In *State v. Willson,* 116 Or 615, 241 P 843 (1925), the court said:

"In *State v. Simonis,* 39 Or. 111 (65 Pac. 595), it is laid down as a rule by Mr. Chief Justice Bean, that an expert, though thoroughly qualified as a witness, cannot be permitted to give an opinion upon facts known to him, and not communicated to the jury. He must first detail to the jury the facts on which he bases his opinion. * * *" 116 Or at 619.

Here the defense psychiatrist had in giving her opinion already testified concerning statements made to her by the defendant relating to his awareness of his own activities at and the circumstances surrounding the stabbing. We think the jury was entitled to know the limitations imposed by the defendant upon the information available to the state's rebuttal psychiatrist through his refusal to answer any questions surrounding the crime based upon his privilege against self-incrimination. The jury is as entitled to know what relevant information was not available to or considered by an expert in arriving at his opinion as it is to know what the expert did consider. It is relevant in determining his competency as an expert and also the weight to be accorded his opinion. This seems particu-

larly true when as here the defense expert had and related information not available to the rebuttal expert. We think it also relevant to assist the jury in evaluating the credibility of the defendant's own evidence previously given in which he related his recollections of the stabbing and the circumstances surrounding it. It cannot be questioned that had the defendant in cross-examination brought out that the doctor had considered no information received from the defendant in reaching his opinion about defendant's awareness of the facts concerning the stabbing and his reasons, if any, for what he did, the doctor on redirect examination could certainly have explained why. The trial of an issue of fact is not a game; it is a search for the truth. The trial judge has wide discretion in determining the time and circumstances surrounding the admissibility of relevant evidence. Clearly there was no abuse of that discretion here. And as set out in the footnote, the court carefully instructed the jury concerning the defendant's Fifth Amendment rights at the time it denied the motion for mistrial. Defendant points to no error in that instruction, nor does he contend that specific mention of his Sixth Amendment rights should have been included therein.

It is not in conflict with the rule announced in *State v. Harris,* 241 Or 224, 405 P2d 492 (1965), where the court said:

"* * * An implied prerequisite to the application of the rule that an expert witness must recount the entire basis for his opinion is that the value of such information not be outweighed by the danger that the jury will be confused on other principal issues of the case." 241 Or at 241.

Here the admitted testimony related directly to the principal if not the only real issue in the case—the mental condition of the defendant at the time of the killing. This rested to a major degree on the testimony of the defendant and the two experts. The challenged testimony, as pointed out above, was clearly relevant

to that issue and was in no way calculated or likely to confuse the jury, as in *State v. Harris,* supra, on "other principal issues of the case." We conclude that on these facts there was no violation of defendant's Fifth Amendment rights[4] in the admission of the challenged testimony.

■ Concerning the Sixth Amendment claim, defendant relies chiefly on *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965). That case related to comment by a prosecutor during argument concerning the failure of a defendant to take the stand, and is not in point here.

Although not relied upon by the defendant, in *State v. Corbin,* 15 Or App 536, 516 P2d 1314 (1973), Sup Ct *review denied* (1974), we note we said:

> "In *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968), the court held that a defendant, being examined pursuant to court order after raising the issue of insanity, could not be ordered to answer questions, the answers of which would be incriminating, nor could the court order defendant's attorney not be present at the examination. This decision is relevant here for the conclusion that the psychiatrist examining the defendant for the state is for all purposes an officer of the state and no different than any police officer when questioning a defendant. Therefore, a valid consent to a psychiatric examination may not be obtained without the defendant's knowingly and voluntarily waiving those rights enumerated in *Miranda.*" 15 Or App at 544.

Here there is no question raised concerning receipt or waiver of his *Miranda* rights by the defendant. It is obvious from the presence of his attorney at and the latter's recording of the second examination that these rights were in fact observed. Indeed it is not claimed that the defendant did not receive his *Miranda* rights. The claim is it was error to state that he wanted his attorney present as the explanation for the termination of the first examination. It is clear that at the first

---

[4]For a good discussion of problems inherent in the determination of this matter, *see* McCormick, Evidence 285, § 134(b) (2d ed E. Cleary 1972).

meeting between defendant and the state psychiatrist no examination was in fact held because at its inception defendant expressed the desire to have his attorney present. This resulted in the immediate termination of the examination and rescheduling of it. We think the doctor was entitled to explain what happened in his contacts with the defendant and why the examination was rescheduled for the same reasons essentially as set forth in our discussion of the Fifth Amendment claim. *United States v. Baird, supra.* There was no prejudice and no violation of the Sixth Amendment right to counsel on the facts here present.

Affirmed.

**SCHWAB, C. J.,** dissenting.

The majority holds that a state-appointed psychiatrist is entitled to testify before a jury that a criminal defendant asserted Fifth Amendment rights by refusing to answer certain questions during questioning, and asserted Sixth Amendment rights by insisting upon the presence of his attorney during questioning.[1] This holding is inconsistent with prior Oregon decisions that the majority purports to apply.

In *State v. Corbin,* 15 Or App 536, 544, 516 P2d 1314 (1973), Sup Ct *review denied* (1974), we held that a state-appointed psychiatrist is "no different than any police officer when questioning a defendant." This holding seems compelled by *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968).[2] In *State v. Dodson,* 22 Or App 542, 540 P2d 380 (1975), and *State v. Hunt,* 15 Or App 76, 514 P2d 1363 (1973), Sup Ct *review denied* (1974), we held a police officer cannot testify before the jury that a criminal

---

[1] The majority suggests the holding is limited to the circumstances of this case. I perceive nothing unusual about the circumstances of this case.

[2] If, as is not the case, the question before us were one of first impression, there is strong authority and sound reasons for a much narrower rule than that stated in *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968). But we are bound by the *Shepard* rule, and our duty here is limited to applying it.

defendant asserted his constitutional rights. This holding seems compelled by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), and *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1964). Reading *Corbin, Dodson* and *Hunt* together, it necessarily follows that a state-appointed psychiatrist cannot testify about a criminal defendant's assertion of constitutional rights.[3]

The majority's reliance on the general rule that an expert witness is entitled to state the factual basis of his or her opinion is misplaced. This general rule does not convert what is otherwise inadmissible evidence into admissible evidence.

I respectfully dissent.

---

[3] *State v. McCauley,* 8 Or App 571, 494 P2d 438, Sup Ct *review denied* (1972), is to the contrary and should be overruled, unless it can be reconciled with our other decisions, which I find to be impossible.