### RUSSELL v. BROOKLYN DAILY EAGLE.

(Supreme Court, Appellate Division, Second Department. May 7, 1915.)

1. LIBEL AND SLANDER ⬤⟳6—ACTIONABLE WORDS—CARTOON.

A newspaper publication of a cartoon, under the headline "Easy Money Puzzle," showing a building with a legend "Onion Bank," and the figure of a man at the door saying, "You're wasting time; come on in here," and in the foreground an effigy of the plaintiff, an unordained preacher, carrying a small package with the subscription, "If Pastor R. can get a dollar a pound for Miracle Wheat, what could he have got for Miracle Stocks and Bonds as a director in the old Union Bank," in view of the contemporaneous failure of the Union Bank by reason of the unlawful acts of its officers, who had been charged with purchasing with depositors' money bogus securities at fictitious prices from co-conspirators, was libelous.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3–16; Dec. Dig. ⬤⟳6.]

2. LIBEL AND SLANDER ⬤⟳123—QUESTION FOR JURY—DEFENSE.

Where defendant pleaded the truth in justification, it was for the jury to ascertain the scope of the cartoon, and to say whether the defense was established.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. ⬤⟳123.]

3. EVIDENCE ⬥⟿333—OFFICIAL REPORTS—DEPARTMENT OF AGRICULTURE.

Where plaintiff, the editor of a publication purporting to be devoted to a religious propaganda, told his readers that an associate had accumulated Miracle Wheat, which he would sell to readers for $1 a pound, and represented that the yield of Miracle Wheat was 10 to 15 times that of common wheat, report of the United States Department of Agriculture, charged by Rev. St. U. S. § 520 (Comp. St. 1913, § 788), with acquiring information on agricultural subjects, by section 526 (section 818) with preserving information on agriculture, etc., which reports, when duly authenticated, are receivable, for any proper purpose, under Code Civ. Proc. § 944, and Act Feb. 9, 1889, c. 122, 25 Stat. 659 (U. S. Comp. St. 1913, § 789), to the effect that Miracle Wheat was no more prolific than ordinary brands of wheat, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig. ⬥⟿333.]

Appeal from Trial Term, Kings County.

Action by Charles T. Russell against the Brooklyn Daily Eagle. From a judgment for defendant, and from an order denying his motion for a new trial, plaintiff appeals. Judgment and order affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Jesse Fuller, Jr., of Brooklyn (J. F. Rutherford, on the brief), for appellant.

I. R. Oeland, of New York City, for respondent.

PER CURIAM. [1] The action is for damages for libel. The defendant is the publisher of a daily newspaper. The plaintiff professes to be an interpreter of the Bible, and is an unordained preacher. The libel alleged was published in a cartoon. The headline of the cartoon is "Easy Money Puzzle." In the cartoon is shown a building on which is printed "Onion Bank." The figure of a man appears at the door of the building. He is represented as saying: "You're wasting time. Come on in here." In the foreground is an effigy of the plaintiff, portrayed as carrying a small package. There is this subscription: "If Pastor Russell can get a dollar a pound for Miracle Wheat, what could he have got for Miracle Stocks and Bonds as a director in the old Union Bank?"

Contemporaneously with the publication, the Union Bank had defaulted in payment of deposits. Its failure was by the press attributed to the infidelity, inefficiency, and unlawful acts of several of its officers. They were charged with purchasing with the depositors' money bogus securities at fictitious prices from co-conspirators. A violent denunciatory newspaper campaign, in which the defendant prominently participated, was being waged against the officers. The plaintiff's plea was that the defendant's purpose was falsely to charge him with dishonest and fraudulent practices in disposing to his disciples, to their loss, of a grade of wheat, known as Miracle Wheat, at $1 per pound. The defendant pleaded the truth in justification. The learned trial court charged the jury that the publication was libelous, and left it to them to say whether the defense was established. The jury rendered a verdict for the defendant.

[2] The charge contained a correct exposition of the law governing the defense. The court properly left it to the jury to ascertain the pith and scope of the cartoon, and then to determine whether defendant's proofs were adequate to meet the charges as thus ascertained.

[3] The appellant's only assignment of error which we deem it necessary to discuss is the asserted inadmissibility of reports of the United States Department of Agriculture. Such reports were duly authenticated, and when so authenticated they are receivable as evidence for any proper purpose. Section 944, Code Civil Procedure; 25 Stat. 659, Fed. Stat. Ann. vol. 1, p. 8.

The plaintiff was the editor of a publication purporting to be devoted to a religious propaganda. In it he informed his sympathetic readers that one of his associates had accumulated Miracle Wheat, which the associate was disposed to sell to the readers of that publication for $1 a pound. The associate promised to give the entire proceeds to a corporation organized and controlled by the plaintiff. In the article it was represented that the yield of Miracle Wheat was 10 or 15 times as great as the yield of common wheat. The record offered in evidence tended to show, as the result of governmental experiment, that Miracle Wheat was no more prolific than brands of wheat in general use and of ordinary quality. There was independent evidence that other wheats could be purchased at prices so low, in comparison, as to make the advertised price of Miracle Wheat exorbitant.

Among the duties imposed and the powers conferred upon the Department of Agriculture are the following: To acquire and to diffuse among the people of the United States useful information on subjects connected with agriculture, in the most general and comprehensive sense of that word (section 520, Rev. Stat. U. S.); to procure and preserve all information concerning agriculture which the Commissioner of Agriculture (now the Secretary), can obtain by means of books and correspondence, and by practical and scientific experiments, accurate records of which experiments shall be kept in his office, by the collection of statistics, and by any other appropriate means within his power. He shall collect new and valuable seeds and plants, shall test, by cultivation, the value of such of them as may require such test, shall propagate such as may be worthy of propagation, and shall distribute them among agriculturists. Section 526, Rev. Stat. U. S. See, also, Act March 2, 1901, c. 805, 31 Stat. 928.

The question is, are those records relevant evidence of the facts therein recorded, upon the issue of justification? In Evanston v. Gunn, 99 U. S. 660, 666, 25 L. Ed. 306, speaking of records of the Weather Bureau, the court said:

"They are, as we have seen, of a public character, kept for public purposes, and so immediately before the eyes of the community that inaccuracies, if they should exist, could hardly escape exposure. They come, therefore, within the rule which admits in evidence 'official registers or records kept by persons in public office in which they are required' (sic) 'either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties or under their personal observation.' Taylor,

Evid. § 1429; 1 Greenl. Evid. § 483. To entitle them to admission it is not necessary that a statute requires them to be kept. It is sufficient that they are kept in the discharge of a public duty. 1 Greenl. Evid. § 496. Nor need they be kept by a public officer himself, if the entries are made under his direction by a person authorized by him. Galt v. Galloway, 4 Pet. 332 [7 L. Ed. 876]. It is hardly necessary to refer to judicial decisions illustrating the rule. They are numerous. A few may be mentioned. De Armond v. Neasmith, 32 Mich. 231; Gurney v. Howe, 9 Gray (Mass.) 404 [69 Am. Dec. 299]; The Catharine Maria, Law Rep. 1 Ad. & Ec. 53; Cliquot's Champagne, 3 Wall. 114 [18 L. Ed. 116]."

While we appreciate that there is some difference between the official record of observations of natural conditions and the official record of observations of the operation of natural conditions, influenced by human action, the distinction is not sufficient to make the rule just quoted inapplicable. We think the court did not err in receiving the evidence.

The judgment and order should be affirmed, with costs.